UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Equity Trust Company Custodian
f/b/o Jeffrey M. Wagner I.R.A.,

    Plaintiff,

v.

Windwrap, LLC,

    Defendant.

Case No. 19-cv-03048

Hon. Martha M. Pacold

## MEMORANDUM OPINION AND ORDER

Plaintiff Equity Trust Company Custodian f/b/o Jeffrey M. Wagner I.R.A. filed this breach of contract and foreclosure action against Windwrap, LLC. Before the court are defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), plaintiff's motion for leave to file a sur-reply in response to the motion to dismiss, and plaintiff's motion for summary judgment. For the reasons set forth below, the court grants plaintiff's motion to file a sur-reply [33] and grants defendant's motion to dismiss [25], without prejudice to filing in the appropriate court. Because the case is dismissed for lack of subject matter jurisdiction, plaintiff's motion for summary judgment [6] is denied as moot.

### I. Legal Standard

Federal courts are courts of limited jurisdiction. *Northern Trust Co. v. Bunge Corp.*, 899 F.2d 591, 593 (7th Cir. 1990). "The party invoking federal jurisdiction bears the burden of demonstrating its existence." *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 617 (7th Cir. 2012).

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction. To determine whether subject matter jurisdiction exists, the court first considers the complaint, "accepting as true all well pleaded allegations and the inferences that may be reasonably drawn from those allegations." *CCC Info. Servs., Inc. v. Am. Salvage Pool Ass'n*, 230 F.3d 342, 346 (7th Cir. 2000). "When evidence pertinent to subject matter jurisdiction has been submitted, the court may look beyond the jurisdictional allegations of the complaint to determine whether subject matter jurisdiction exists." *Id.*

Here, plaintiff filed, simultaneously with the complaint, a motion for summary judgment. (Dkt. 6.)[1] In support of the motion for summary judgment, plaintiff filed a memorandum (Dkt. 7) and the affidavit of Jeffrey M. Wagner (Dkt. 9) with attached Exhibits A-Z (Dkts. 9-1 through 9-27). Besides the complaint, the court considers these documents to the extent that they bear on subject matter jurisdiction.

## II. Background

Jeffrey M. Wagner met Peter Carbonaro in 1992, when Carbonaro's employer hired Wagner's law firm. (Wagner Aff., Dkt. 9 ¶ 2.) Wagner later hired Carbonaro's company to build a family home. (*Id.* ¶ 3.) Carbonaro next began developing a home construction product aimed at better securing roofs to houses, and Wagner provided financial and legal assistance for its development, beginning in 2001 and continuing periodically. (*Id.* ¶¶ 4–8.)

In 2013, Carbonaro's product was ready for final testing and engineering. (*Id.* ¶ 9.) Wagner and Carbonaro discussed funding the final product development through a self-directed Individual Retirement Account (IRA). (*Id.* ¶ 10.) Carbonaro identified Equity Trust Company as a potential custodian for the self-directed IRA, and, on April 4, 2013, Wagner opened a self-directed IRA with Equity Trust Company. (*Id.* ¶¶ 12–15.) Around the same time, Carbonaro formed Windwrap, Inc. to own the product and bring it to market. (*Id.* ¶¶ 10–11.)

On April 5, 2013, Windwrap, Inc. executed a Promissory Note in favor of "Equity Trust Company Custodian FBO Jeffrey Wagner IRA," in the amount of $380,000.00; Windwrap, Inc. and "Equity Trust Company Custodian FBO Jeffrey Wagner IRA" also entered into a Security Agreement that secured the Promissory Note by a security interest in Windwrap, Inc.'s assets. (Complaint, Dkt. 1, ¶¶ 6–8; Promissory Note and Security Agreement, Dkt. 1-1, Exs. A–B.) Consistent with these documents, Wagner directed Equity Trust Company to send $380,000 to Windwrap, Inc., from Wagner's self-directed IRA, by filling out and signing a "Promissory Note Direction of Investment" form provided by Equity Trust Company. (Dkt. 9-11.)

Carbonaro, Windwrap, Inc.'s President, signed the Promissory Note and Security Agreement on behalf of Windwrap, Inc. (Dkt. 1-1 at 3, 7.) Wagner signed the Security Agreement on behalf of Equity Trust Company Custodian FBO Jeffrey Wagner IRA; Equity Trust Company appears to have subsequently added a stamp on the signature page indicating that the document had been "[p]rocessed" on April 22, 2013. (*Id.* at 7.) That same day, Equity Trust Company sent Wagner an auto-

---

[1] Docket entries are cited as "Dkt. [docket number]" followed by the page or paragraph number. Page number citations refer to the ECF page number.

generated email confirmation that the $380,000 "[p]urchase request" had been processed. (Dkt. 9 ¶ 20 & Ex. K (Dkt. 9-12).)

Windwrap, LLC later succeeded Windwrap, Inc. as the borrower on the Promissory Note. (Dkt. 1 ¶¶ 13–14.) Windwrap has not repaid the principal or interest due on the loan. (*Id.* ¶ 15.)

Equity Trust Company Custodian f/b/o Jeffrey M. Wagner I.R.A. filed this lawsuit against Windwrap. The complaint contains two counts: breach of contract (alleging breach of the Promissory Note and Security Agreement) and foreclosure of security interest. (Dkt. 1 ¶¶ 5-27.) The relief sought includes judgment in favor of Equity Trust Company Custodian f/b/o Jeffrey M. Wagner I.R.A. and against Windwrap on both counts; damages, consisting of the $380,000.00 loan principal, interest totaling $304,000.00 as of April 5, 2019, plus $156.16 per day thereafter until the date of judgment, $3,030 paid to the U.S. Patent Office to maintain and/or reinstate Windwrap's patents, and attorneys' fees and costs; injunctive relief allowing an inspection of Windwrap's "books, records, and other Collateral that it pledged pursuant to the parties' Security Agreement"; and "a judgment of foreclosure on Equity Trust's security interest, including an Order declaring that Equity Trust is the owner of the Windwrap patents, trademarks and other intellectual property." (*Id.* at 8.)

### III. Analysis

The complaint alleges that the court has diversity jurisdiction over this case. (Dkt. 1 ¶¶ 1–3.) Diversity jurisdiction exists when the matter in controversy exceeds $75,000, exclusive of interest and costs, and there is complete diversity between the parties. 28 U.S.C. § 1332(a)(1); *see also Krueger v. Cartwright*, 996 F.2d 928, 931 (7th Cir. 1993) (citing *Strawbridge v. Curtiss*, 7 U.S. 267 (1806)). The complaint alleges that the amount in controversy exceeds the $380,000 loaned to Windwrap (Dkt. 1 ¶ 15); Windwrap does not dispute this. The only question, then, is whether the parties are citizens of different states. *See* § 1332(a)(1).

The defendant, Windwrap, LLC, is a citizen of Illinois (and possibly other states). "[T]he citizenship of an LLC for purposes of the diversity jurisdiction is the citizenship of its members." *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998). Windwrap has three members: Peter Carbonaro, Maria Carbonaro, and Jeffrey Wagner. (Dkt. 1 ¶ 2.) The complaint alleges that all three are residents of Illinois. (*Id.*) "Citizenship depends not on residence but on domicile, which means the place where a person intends to live in the long run. It is possible to reside in one state while planning to return to a long-term residence in another state." *RTP LLC v. ORIX Real Estate Capital, Inc.*, 827 F.3d 689, 692 (7th Cir. 2016); *see also Auto. Fin. Corp. v. Automax of N. Illinois, Inc.*, 194 F. Supp. 2d 796, 797 (N.D. Ill. 2002) (for purposes of diversity jurisdiction, an individual's citizenship, rather

3

than residence, "is the relevant fact"). While the parties have not identified the citizenship of Peter Carbonaro or Maria Carbonaro, in the briefing on the motion to dismiss, plaintiff asserts, and Windwrap does not dispute, that Jeffrey Wagner is a citizen of Illinois. (*See* Dkt. 30 at 5; Dkt. 31 at 10.) Thus, Windwrap is a citizen of at least Illinois, as well as Peter Carbonaro's and Maria Carbonaro's state(s) of citizenship.

The parties dispute the citizenship of the plaintiff, Equity Trust Company Custodian f/b/o Jeffrey M. Wagner I.R.A. The plaintiff contends that its citizenship is that of the entity Equity Trust Company, that Equity Trust Company is chartered under the laws of South Dakota and has its principal place of business in Ohio, and that therefore the plaintiff is not an Illinois citizen. (Dkt. 30 at 3 & n.1.)[2] Windwrap contends that Wagner, not Equity Trust Company, is the real party in interest for diversity jurisdiction purposes, and Wagner, like Windwrap, is a citizen of Illinois. (Dkt. 27 at 5–7.)

On its face, the complaint identifies the plaintiff as "Equity Trust Company Custodian f/b/o Jeffrey M. Wagner I.R.A." On its face, this name appears to mean Equity Trust Company, suing in its capacity as the custodian of the Wagner self-directed IRA, for the benefit of the Wagner self-directed IRA. However, the court can review documents beyond the complaint that address the relationship among Equity Trust Company, Wagner's self-directed IRA, and Wagner and thus relate to subject matter jurisdiction. Before reviewing the record, the court turns to the applicable legal principles.

The Seventh Circuit explained in *CCC Info. Servs., Inc. v. Am. Salvage Pool Ass'n*, 230 F.3d 342 (7th Cir. 2000):

> Ordinarily, we look only to the citizenship of the named parties and not to the citizenship of the persons being represented by a named party in order to determine whether complete diversity exists. . . . This is the general rule for corporations as well as natural persons. *See* 28 U.S.C. § 1332(c)(1). With certain exceptions that are not relevant here, that section provides that a corporation is deemed a citizen of the State in which it was incorporated and of the State where it has its principal place of business.

---

[2] According to the complaint, Equity Trust Company is an *Ohio* corporation with its principal place of business in Ohio (Dkt. 1 ¶ 1), but the response to the motion to dismiss corrects that "scrivener's error" and states that Equity Trust Company was "chartered under the laws of *South Dakota* and maintains its principal place of business in Ohio" (Dkt. 30 at 3 n.1) (emphasis added) (citing *Kloepper v. Equity Tr. Co.*, No. 11-cv-02527, 2012 WL 1998052, at *1 (N.D. Ohio June 1, 2012)).

4

*Id.* at 346. Here, based on plaintiff's filings, Equity Trust Company appears to be a corporation incorporated under the laws of South Dakota, with its principal place of business in Ohio. Applying the ordinary rule, then, Equity Trust Company is a citizen of South Dakota and Ohio.[3]

*CCC* continued, however, that "[a] corollary of the general rule we just stated is that the citizenship of the real party in interest is determinative when deciding whether the district court has diversity jurisdiction. . . . This is because a party who has no real interest in the outcome of the litigation should not be able to use its citizenship to transform a local controversy into a federal case." *Id.* (citing cases including *Navarro Sav. Ass'n v. Lee*, 446 U.S. 458, 460–61 (1980), and *Northern Trust*, 899 F.2d at 595).

As *Navarro* put it: "[T]he 'citizens' upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy. . . . Thus, a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy." 446 U.S. at 460–61 (citations omitted); *see also Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161, 175 (2014) ("The background real party in interest inquiry identifies what party's (or parties') citizenship should be considered in determining diversity."); 15A Moore's Federal Practice - Civil § 102.15 (2020) ("Nominal parties are generally those without a real interest in the litigation. A real-party-in-interest defendant is one who, according to applicable substantive law, has the duty sought to be enforced or enjoined. In contrast to a real party in interest, a formal or nominal party is one who, in a genuine legal sense, has neither an interest in the result of the suit, nor an actual interest in or control over the subject matter of the litigation.") (footnotes omitted).

*CCC* followed two other Seventh Circuit cases, *Northern Trust Co. v. Bunge Corp.*, 899 F.2d 591 (7th Cir. 1990), and *Nat'l Ass'n of Realtors v. Nat'l Real Estate Ass'n, Inc.*, 894 F.2d 937, 939 (7th Cir. 1990), applying similar principles. As *Northern Trust* explained: "In the eyes of the law a person who sues or is sued in

---

[3] Because, based on plaintiff's filings, Equity Trust Company appears to be a corporation, its citizenship should be analyzed under the rule for corporations. The "Trust" label in its name does not subject it to any special rule. *See Americold Realty Tr. v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1014 (2016) ("While humans and corporations can assert their own citizenship, other entities take the citizenship of their members."); *RTP*, 827 F.3d at 691 (7th Cir. 2016) ("*Americold* holds that *Navarro* [*Sav. Ass'n v. Lee*, 446 U.S. 458 (1980)] does not establish a special rule for trusts—indeed is not about trusts at all."). Besides being a corporation, Equity Trust Company also appears to be a South Dakota trust company. *See generally* South Dakota Codified Laws (SDCL) Chapter 51A-6 ("Trust Companies"), 51A-6A ("Creation of Trust Companies"). But just as "[m]any States . . . have applied the 'trust' label to a variety of *unincorporated* entities that have little in common with" a traditional trust, *Americold*, 136 S. Ct. at 1016 (emphasis added), and those entities follow the rule for unincorporated entities, so here, state law apparently has applied the "trust" label to a corporation, and it follows the rule for corporations.

5

a representative capacity is distinct from that person in his individual capacity. . . . This is no less true where the 'person' suing is a corporation. Accordingly, the fact that the Northern Trust Company, an Illinois corporation, is deemed a citizen of Illinois for diversity purposes in suits affecting the interests of its own shareholders does not mean that it will be deemed a citizen of Illinois in its capacity as an agent representing the interests of others." *Northern Trust*, 899 F.2d at 595 (citation omitted). The Seventh Circuit concluded that "in its capacity as a representative, Northern has no property interest of its own at stake." *Id.* at 595. Thus, jurisdiction turned on whether individual stock sellers represented by Northern met the citizenship and amount in controversy requirements. *Id.* at 596–97.

*Nat'l Ass'n of Realtors* applied similar principles. 894 F.2d at 939 ("NAR is a corporation, and for purposes of diversity jurisdiction the relevant citizenship is that of the corporation rather than that of its shareholders. . . . But the rule we have just stated . . . presupposes that the wrong is to the corporation rather than to the shareholders or members directly."); *see also YP Recovery Inc. v. Yellowparts Europe, SL*, No. 15-cv-03428, 2016 WL 4549109, at *5 (N.D. Ill. Sept. 1, 2016).[4]

So have courts outside the Seventh Circuit. *See In re Lorazepam & Clorazepate Antitrust Litig.*, 631 F.3d 537, 540 (D.C. Cir. 2011); *Oscar Gruss & Son, Inc. v. Hollander*, 337 F.3d 186, 194 (2d Cir. 2003); *Airlines Reporting Corp. (ARC) v. S & N Travel, Inc.*, 58 F.3d 857, 862 (2d Cir. 1995); *Aetna Life Ins. Co. v. Found. Surgery Affiliates, LLC*, 358 F. Supp. 3d 426, 434–35 & n.9 (E.D. Pa. 2018); *United States Aviation Underwriters, Inc. v. Textron Inc.*, No. 15-cv-05216 (JFK), 2015 WL

---

[4] Cases involving nominal escrow or depository defendants are not directly on point because this case involves a plaintiff, not a defendant, but they are analogous in some respects. *Cf. Matchett v. Wold*, 818 F.2d 574, 576 (7th Cir. 1987) ("The addition to a lawsuit of a purely nominal party—the holder of the stakes of the dispute between the plaintiff and the original defendant—does not affect diversity jurisdiction."); *S.E.C. v. Cherif*, 933 F.2d 403, 414 (7th Cir. 1991) ("A 'nominal defendant' is a person who can be joined to aid the recovery of relief without an assertion of subject matter jurisdiction only because he has no ownership interest in the property which is the subject of litigation. A nominal defendant holds the subject matter of the litigation in a subordinate or possessory capacity as to which there is no dispute. . . . Because the nominal defendant is a trustee, agent, or depositary, . . . who has possession of the funds which are the subject of litigation, he must often be joined purely as a means of facilitating collection. The court needs to order the nominal defendant to turn over funds to the prevailing party when the dispute between the parties is resolved. A nominal defendant is not a real party in interest, however, because he has no interest in the subject matter litigated. His relation to the suit is merely incidental and it is of no moment to him whether the one or the other side in the controversy succeeds. . . . Because of the non-interested status of the nominal defendant, there is no claim against him and it is unnecessary to obtain subject matter jurisdiction over him once jurisdiction over the defendant is established.") (internal citations and alterations omitted); *Multiplan USA Corp. v. Walthem Assets, Ltd.*, No. 16-60207-CIV, 2016 WL 10952910, at *2 (S.D. Fla. Mar. 23, 2016) ("it is well established that an escrow agent or depository that has been joined merely to perform a ministerial duty is no more than a nominal party and is therefore disregarded for diversity purposes").

8373681, at *2–3 (S.D.N.Y. Dec. 8, 2015); *Zee Med. Distrib. Ass'n, Inc. v. Zee Med., Inc.*, 23 F. Supp. 2d 1151, 1155–56 (N.D. Cal. 1998).[5]

The court now turns to the record with these principles in mind. As noted above, when additional evidence pertinent to subject matter jurisdiction has been submitted, the court may look beyond the allegations in the complaint to determine whether subject matter jurisdiction exists. *CCC*, 230 F.3d at 346.

The record sheds light on the role of Equity Trust Company and the relationship between Wagner, Wagner's self-directed IRA, and Equity Trust Company. Although the record does not contain the agreement between Equity

---

[5] In arguing that "Equity Trust" is a real party in interest, plaintiff cites *Lincoln Prop. Co. v. Roche*, 546 U.S. 81 (2005). (Dkt. 30 at 6–7.) As the Seventh Circuit explained, "the Supreme Court has rejected the theory that the federal courts, when assessing their jurisdiction, should look beyond the pleadings to discover unnamed real parties in interest." *PNC Bank, N.A. v. Spencer*, 763 F.3d 650, 654 (7th Cir. 2014) (per curiam) (citing *Lincoln*, 546 U.S. at 92–93). Considering the citizenship of Wagner or his IRA is consistent with that principle for a number of reasons.

First, *Lincoln* held that "[i]t is not incumbent on the named defendants to negate the existence of a potential defendant whose presence in the action would destroy diversity." *Lincoln*, 546 U.S. at 84; *see also id.* at 94 ("The potential liability of other parties was a matter plaintiffs' counsel might have assiduously explored through discovery devices. It was not incumbent on Lincoln to propose as additional defendants persons the Roches, as masters of their complaint, permissively might have joined."). That is not the situation here. The potential parties with the genuine interest (Wagner and his IRA) appear either on the face of the complaint, in the named plaintiff's name, or in other documents filed simultaneously, such as the Wagner affidavit (Dkt. 9). No one is being required to search for potential unnamed parties.

Second, *Lincoln* mentioned instances when a party "was joined only as designated performer of a ministerial act, . . . or otherwise had no control of, impact on, or stake in the controversy." *Lincoln*, 546 U.S. at 92 (citations omitted); *see also Flextronics Int'l USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd*, 186 F. Supp. 3d 852, 858 (N.D. Ill. 2016) (*Lincoln* "recognizes a few exceptions to the principle that the named parties are the only ones that matter").

Third, the Supreme Court has mentioned the "real party in interest inquiry" relatively recently. *Mississippi ex rel. Hood*, 571 U.S. at 175 ("The background real party in interest inquiry identifies what party's (or parties') citizenship should be considered in determining diversity."); *see also YP Recovery Inc. v. Yellowparts Europe, SL*, No. 15-cv-3428, 2016 WL 4549109, at *5 (N.D. Ill. Sept. 1, 2016) (citing *Mississippi ex re. Hood*, *CCC*, *Northern Trust*, and *Nat'l Ass'n of Realtors*). There is no reason to believe that *Lincoln* silently overruled *Northern Trust*, *Nat'l Ass'n of Realtors*, *CCC*, or any of the other cases outside the Seventh Circuit, cited in the text, that apply the real party in interest analysis.

Plaintiff also quotes *Culbertson v. Libco Corp.*, 983 F.2d 82, 85 (7th Cir. 1993), for the principle that "the relevant citizenship for diversity purposes is that of the named plaintiff and not that of the persons on whose behalf she is suing." (Dkt. 30 at 7). But *Culbertson* held, after examining the roles of the named plaintiff and the unnamed party, that "[h]ere the named parties are the real parties in interest." *Culbertson*, 983 F.2d at 85. The record here supports a different conclusion.

7

Trust Company and Wagner establishing the self-directed IRA, other documents in the record, filed by plaintiff, describe the arrangement. From the record, it appears that Equity Trust Company is a purely passive custodian of Wagner's self-directed IRA, not a fiduciary; that Wagner has no authority to enter into transactions on behalf of Equity Trust Company itself (as opposed to his self-directed IRA that Equity Trust Company holds as a passive custodian); that Wagner alone, not Equity Trust Company, controls investments of the assets in his self-directed IRA; and that Wagner sought and received authorization from Equity Trust Company to use the name "Equity Trust Company Custodian f/b/o Jeffrey M. Wagner I.R.A." to enter into transactions using the assets in his self-directed IRA and to enforce the relevant contracts through this lawsuit. *Cf. Metz v. Indep. Tr. Corp.*, 994 F.2d 395, 398, 402 (7th Cir. 1993) (concluding, based on a review of the Trust Agreement and "other documents detailing the relationship between Metz and Intrust [Independent Trust Corporation]," that Intrust "was a nondiscretionary trustee who was merely obligated to follow the directives of Metz and/or his agent" and "merely served as a passive conduit of [Metz's] IRA funds").

One relevant document is a February 27, 2019 letter from Equity Trust Company (Dkt. 9-10), attached to an affidavit that Wagner filed in this case (Dkt. 9) in support of a motion for summary judgment. The letter has the header "Asset Purchase Letter – IRA," is addressed "To Whom It May Concern," and was signed by Rachel Cain, Corporate Alternate Signer, Equity Trust Company. (Dkt. 9-10 at 2.) It confirms that Equity Trust Company "is the Custodian of the Jeffrey Wagner Self-Directed Individual Retirement Account (IRA)." (*Id.*) The letter explains:

> Equity Trust Company serves as a passive, non-discretionary custodian of customer directed IRAs. As a passive custodian, Equity Trust Company does not solicit investments, nor do we provide advice or recommendations, to our customers with regard to their investments, acquired by or in, their IRA. As a passive custodian, Equity Trust Company has no authority to take any action with regard to their investments acquired by, or held in, their IRA without the express direction of the IRA owner.

The letter describes Wagner's authority over the IRA assets, including Wagner's authority to purchase, sell, and sign documents for the benefit of his self-directed IRA:

> This letter authorizes Jeffrey Wagner to purchase or sell assets in the name of Equity Trust Company for the benefit of their IRA. It is permissible for Jeffrey Wagner to sign agreements or other documents on behalf of their IRA. Although Equity may be asked to sign certain

8

documents relating to the purchase, we reserve the right to refuse and/or request Jeffrey Wagner to sign documents on behalf of their IRA.

Any asset that Jeffrey Wagner purchases or sells for their IRA must be titled as follows: "Equity Trust Company Custodian FBO Jeffrey Wagner IRA." Jeffrey Wagner does not have authority to purchase assets solely in the name "Equity Trust Company."

Another document, the "Promissory Note Direction of Investment" form that Wagner completed and signed to direct the loan from the IRA to Windwrap, confirms Equity Trust Company's role as a passive custodian, not a fiduciary, and Wagner's authority over and responsibility for investments. The form states: "You are responsible for directing the investment of assets in your account. Equity Trust Company does not provide any investment advice, or recommend or evaluate the merits or suitability of any investment." (Dkt. 9-11 at 2.) The form provides "Document Titling Instructions"; the instructions direct the person completing the form (here, Wagner), if "I am making an investment titled directly to my IRA," to use the format "EQUITY TRUST COMPANY CUSTODIAN FBO *(ACCOUNT HOLDER'S NAME)* IRA" on supporting documentation, and explain, "When purchasing an asset for your account, it is imperative that it is properly titled." (*Id.* at 5.) The form also states, among a page of boilerplate disclosures:

> Custodian is acting solely as a passive Custodain [*sic*] to hold Retirement Account assets and in no other capacity . . . .
>
> My Retirement Account is self-directed and I, alone, am responsible for the selection, due diligence, management, review and retention of all investments in my account. I agree that the Custodian is not a 'fiduciary' for my account, as said term is defined in the Internal Revenue Code, ERISA or any other applicable federal, state or local laws. I hereby direct the custodian, in a passive capacity, to enact this transaction for my account, in accordance with my adoption agreement.

(*Id.* at 7.)

Based on these documents, Wagner lacks authority to purchase assets on behalf of Equity Trust Company generally. Rather, Wagner received authority, in purchasing and selling assets for the benefit of his self-directed IRA, to use the name "Equity Trust Company Custodian FBO Jeffrey Wagner IRA." That name appears both in the Promissory Note and Security Agreement and as the plaintiff in this litigation.

It is also apparent from Wagner's affidavit that Wagner, not Equity Trust Company, controls this litigation. Wagner's affidavit explains: "Because Equity

9

Trust acts as a custodian for my self-directed IRA, and not a fiduciary, I have obtained Equity Trust's confirmation that I can act in its name, for the purpose of enforcing the Note and Security Agreement. I confirmed this in a telephone call with Equity Trust and I received written confirmation from it." (Wagner Aff., Dkt. 9 ¶ 21 (citing Ex. I to Wagner Aff., the Feb. 27, 2019 letter discussed above)). This amounts to the same authorization the letter gave: Wagner may use the name "Equity Trust Company Custodian FBO Jeffrey Wagner IRA" in litigating for the benefit of his self-directed IRA. There is no indication of any actual participation by Equity Trust Company in this litigation, to protect its own assets. And, while typos and scrivener's errors are understandable, the facts that the complaint (even if nominally filed by Equity Trust Company in some capacity) identified the wrong state of Equity Trust Company's own incorporation, and that plaintiff's brief had to resort to citing a case (*Kloepper*) for the correct state of incorporation, as opposed to obtaining that information from the client, may be some indication that Equity Trust Company is not participating meaningfully in the lawsuit.

A review of the relief sought in the complaint also shows that the relief would benefit not Equity Trust Company or its shareholders, but Wagner and his IRA. The relief sought includes judgment in favor of Equity Trust Company Custodian f/b/o Jeffrey M. Wagner I.R.A. and against Windwrap on both counts; damages, consisting of the $380,000.00 loan principal, interest totaling $304,000.00 as of April 5, 2019, plus $156.16 per day thereafter until the date of judgment, $3,030 paid to the U.S. Patent Office to maintain and/or reinstate Windwrap's patents, and attorneys' fees and costs; injunctive relief allowing an inspection of Windwrap's "books, records, and other Collateral that it pledged pursuant to the parties' Security Agreement"; and "a judgment of foreclosure on Equity Trust's security interest, including an Order declaring that Equity Trust is the owner of the Windwrap patents, trademarks and other intellectual property." (Dkt. 1 at 8.) None of these remedies would benefit Equity Trust Company itself or its shareholders. At most, Equity Trust Company would serve as a passive custodian of any assets Wagner or his IRA might obtain through this lawsuit.

Based on the record as a whole, Equity Trust Company is a purely passive custodian, not a fiduciary. Wagner, rather than Equity Trust Company, had control over investments from Wagner's self-directed IRA. Wagner received permission to use the name "Equity Trust Company Custodian FBO Jeffrey Wagner IRA" only to act (make investments and enforce the related contracts) with respect to the assets in his self-directed IRA, not on behalf of Equity Trust Company generally. *Cf. Jones v. Horizon Tr. Co.*, No. 17-cv-11304, 2019 WL 764347, at *1 (E.D. Mich. Feb. 21, 2019) ("Defendants include Horizon Trust Company, an IRA account managed by Horizon Trust Company in Richard Smith's name (styled as 'Horizon Trust Company FBO ['for the benefit of'] Richard Smith IRA') and Richard Smith.").

As in *Northern Trust* and the other cases cited above, no property interest of Equity Trust Company itself, or its shareholders, is at issue. This lawsuit was filed to protect the funds in Wagner's IRA—it was not brought to benefit Equity Trust Company or its shareholders. It was Wagner who decided to invest in Windwrap, Wagner who directed the IRA to send it money, and Wagner who now seeks—through his IRA—to recover that investment. The only interests at issue are interests of Wagner or his IRA, held by Equity Trust Company as a purely passive custodian.[6]

---

[6] The court has found relatively few cases involving self-directed IRAs, and has not found a case discussing the citizenship of a self-directed IRA or its custodian for purposes of diversity jurisdiction. However, the court sees nothing inconsistent between this decision and the few self-directed IRA cases it has found. For example:

*FBO David Sweet IRA v. Taylor*, 4 F. Supp. 3d 1282 (M.D. Ala. 2014), did not involve citizenship for diversity jurisdiction purposes; rather, the question was whether the beneficiary of an Equity Trust Company self-directed IRA could proceed with a suit naming "FBO David Sweet IRA" as the plaintiff. The court noted that "[a]n IRA is a trust created in the United States for the exclusive benefit of the individual or his beneficiaries. . . . [A] Self-Directed IRA, like the one at issue here, is unique in that the owner or beneficiary of the IRA acts as a trustee for all intent and purposes. While the IRS and the SEC require that all IRA's be placed with a holding company that serves as a trustee or custodian of the account, it is the owner of the Self–Directed IRA who manages, directs, and controls the investments." *Id*. at 1284–85. The court concluded that the beneficiary's suit on behalf of his self-directed IRA was proper. *Id*. at 1285 ("[U]nder the limited facts and circumstances surrounding this unique situation, the Court finds that for the purposes of this case, ETC served as merely a holding company while Sweet acted as trustee of his Self–Directed IRA. Accordingly, Sweet's suit on behalf of David Sweet IRA is proper.").

*Deem v. Baron*, No. 2:15-cv-00755-DS, 2016 WL 8230425 (D. Utah Apr. 14, 2016), concluded, under Fed. R. Civ. P. 17(a), that when individual IRA beneficiaries, not the custodian, had sole responsibility for decisions, the IRA beneficiaries, not the custodian, were "the true parties in interest. Since the custodian/holder has not been involved in the decision-making process, it lacks the knowledge of the facts which would allow it to bring this action." *Id*. at *2.

*Jones v. Horizon Tr. Co.*, No. 17-cv-11304, 2019 WL 764347 (E.D. Mich. Feb. 21, 2019), was a case filed by a tenant of a house against an individual defendant, the individual defendant's self-directed IRA, and the company serving as the custodian of the self-directed IRA (Horizon Trust Company), involving an injury suffered at the house. The individual defendant did not own the property "in his personal capacity, but through his self-directed IRA, which was maintained by Horizon Trust Company." *Id*. at *2. The court granted summary judgment for Horizon Trust Company due to its role as custodian, *id*. at *5–6, but denied summary judgment for the IRA (which was styled as "Horizon Trust Company FBO Richard Smith IRA") and the individual defendant, *id*. at *6–9.

*Lawrence v. Am. IRA, LLC*, No. 1:12-cv-02209-JSA, 2014 WL 11728723 (N.D. Ga. Nov. 26, 2014), concluded that plaintiff (a debtor who had allegedly defaulted on a loan from a self-directed IRA) could not avoid foreclosure by arguing that the self-directed IRA beneficiary failed to get authority from the passive custodian to pursue foreclosure, because "[a]s the party responsible for controlling and managing the assets, it was Bohannon [the self-directed IRA beneficiary]'s right and responsibility to make those decisions and to enforce the security interest and collect on the debt." *Id*. at *6.

11

Plaintiff contends that "Equity Trust" has the right to enforce the Promissory Note and Security Agreement, citing Illinois law. (Dkt. 30 at 9–13.) For example, Plaintiff argues that "Equity Trust is the 'holder' of the Promissory Note and Security Agreement." (*Id.* at 10.) Plaintiff argues that "in Illinois, 'the mere attachment of a note to a complaint is *prima facie* evidence that plaintiff owns the note." (*Id.* at 11 (quoting *Citibank, N.A. v. Wilbern*, No. 12-cv-00755, 2014 WL 1292374, at *6 (N.D. Ill. Mar. 28, 2014), and citing other cases).) Plaintiff also cites *Mortg. Elec. Registration Sys., Inc. v. Barnes*, 406 Ill. App. 3d 1, 7 (2010), for the proposition that "[a] plaintiff can maintain a lawsuit although the beneficial ownership of the note is in another person." (Dkt. 30 at 11.)

The court may not "make merits determinations . . . and then . . . use those determinations to conclude that the court lacks jurisdiction," *Flextronics Int'l USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd*, 186 F. Supp. 3d 852, 858 (N.D. Ill. 2016). The court declines to reach the merits of any claims plaintiff may have under Illinois law. But the burden is still on plaintiff to establish jurisdiction. While plaintiff need not prove its claims on the merits at this stage, plaintiff has not made a sufficient showing that Equity Trust Company itself has a "real interest in the outcome of the litigation," *CCC*, 230 F.3d at 346, or, put another way, a "property interest of its own at stake," *Northern Trust*, 899 F.2d at 595, based on either the loan documents or the general principles of Illinois law that plaintiff cites.

As to plaintiff's argument that the loan documents give "Equity Trust" the right to enforce them, the "Equity Trust" identified in the Promissory Note, Security Agreement, and other loan documents—like the plaintiff in this lawsuit—is not "Equity Trust Company," but "Equity Trust Company Custodian FBO Jeffrey Wagner IRA." (Dkt. 9-2 at 2 (Promissory Note); Dkt. 9-3 at 2, 4 (Security Agreement); Dkt. 9-4 at 2 (UCC Financing Statement); Dkt. 9-5 at 2 (Affirmation of Promissory Note) ("Equity Trust Company, as Custodian FBO Jeffrey Wagner IRA").) The loan documents are consistent with the February 27, 2019 letter permitting Wagner to use that nomenclature to make investments from his IRA. The documents offer no basis to conclude that Equity Trust Company itself has any interest in the assets of the Wagner IRA, seeks to assert an interest in those assets, or is serving in any capacity other than as a passive custodian. Plaintiff has not offered any other documents that could support a different understanding of Equity Trust Company's role with respect to Wagner's IRA or this litigation.

Similarly, the general principles of Illinois law plaintiff cites do not amount to a sufficient showing that Equity Trust Company itself has any property interest of its own at stake when all indications from plaintiff's own documents are that Equity Trust Company is a purely passive custodian, is not a fiduciary, exercises no control over Wagner's assets, would not benefit from the remedies sought in this lawsuit, and is "suing" only nominally and entirely at Wagner's initiative.

Plaintiff contends that "Equity Trust Company and similarly-situated companies, FBO their beneficiaries, have been the named plaintiff in other suits around the country." (Dkt. 30 at 4 n.2 (citing *Equity Trust Co., Custodian FBO Jean K. Thoden IRA v. McDonald*, 806 F.3d 833 (5th Cir. 2015); *Pensco Trust Co. Custodian FBO Jeffrey Hermann IRA v. Delfierro*, No. 16-cv-01926, 2017 WL 3454570 (W.D. Wash. Aug. 11, 2017)).) The cases plaintiff cites are not persuasive. *Thoden* did not involve diversity jurisdiction; the case was filed in state court and then removed to federal court by the defendant, the Secretary of Veterans Affairs, a federal officer, presumably under 28 U.S.C. § 1442(a)(1). *Thoden*, 806 F.3d at 833. As to *Pensco*: First, the defendant did not contest diversity jurisdiction; the plaintiff filed the case in state court and the defendant removed the case. Second, although it ultimately concluded otherwise, the court acknowledged that "there is some authority, albeit limited, to support Defendant's assertion" that as the custodian of an IRA account, Pensco lacked capacity to sue. *Pensco*, 2017 WL 3454570, at *2 (citing *Deem*, 2016 WL 8230425, and *FBO David Sweet IRA*, 4 F. Supp. 3d 1282). Third, unlike here, the defendant in *Pensco* "ma[de] no showing that the current Plaintiff does not have the capacity to sue. Indeed, she makes no effort to demonstrate the relationship between Mr. Hermann and PENSCO as the custodian of his IRA account, and provides no evidence of the type of account held by PENSCO for the benefit of Mr. Hermann." *Id.* at *4. Here, the record does contain evidence about the arrangement among Wagner, his IRA, and Equity Trust Company.[7]

Even if Equity Trust Company, rather than Wagner or Wagner's self-directed IRA, had a genuine interest in the suit, Equity Trust Company would be suing purely as a custodian, in a nominal or representative capacity. Describing Equity Trust Company as "suing," even as a representative, does not seem accurate, given its lack of involvement in the litigation. In *Northern Trust*, Northern Trust hired attorneys, filed a complaint, and litigated the case, albeit in a representative capacity, on behalf of a number of individuals. Here, in contrast, Equity Trust Company does not appear to be participating in any meaningful way in, let alone directing, this litigation. Its role appears to be purely nominal and ministerial. But even assuming that Equity Trust Company is in fact suing in a representative capacity, then consistent with *Northern Trust*, for purposes of diversity jurisdiction, the court considers the citizenship of the person or entity represented by Equity Trust Company, rather than the citizenship of Equity Trust Company itself.

---

[7] *Pensco* did state: "the Court affirmed what the Washington state court had already determined—Plaintiff is the beneficial owner of the mortgage note, '<u>with power and authority to enforce the same</u>.'" 2017 WL 3454570, at *2 (emphasis added by *Pensco*, quoting Washington state court decision). However, as best this court can tell, the state court decision quoted by *Pensco* concerned a chain of title issue as between "Pensco Trust Company Custodian FBO Jeffrey D. Hermann, IRA Account Number 20005343" and other unrelated entities (*e.g.*, Mariners Investment Fund, LLC), not a question about the arrangement between Pensco Trust Company (as custodian) and the IRA account beneficiary (Hermann); and Hermann in his individual capacity was also a party to the state court litigation. *See Pensco*, No. 2:16-cv-01926-RSM (W.D. Wash.), Dkt. 48 at 5 (prior federal court order); Dkt. 34-1 at 2–11 (state court decision).

13

As discussed further below, that means considering the citizenship of the Wagner self-directed IRA or Wagner himself.

In the end, whether "Equity Trust Company Custodian FBO Jeffrey Wagner IRA" (a) effectively means Wagner's self-directed IRA or Wagner himself or (b) means that Equity Trust Company is bringing suit in a representative capacity on behalf of Wagner's IRA or Wagner himself, the conclusion is the same: the citizenship that matters for diversity jurisdiction is not that of Equity Trust Company, but that of Wagner's IRA or Wagner himself.

As between Wagner's IRA and Wagner himself, it is debatable whose citizenship matters. On one hand, the name of the plaintiff, "Equity Trust Company Custodian f/b/o Jeffrey Wagner I.R.A.," clearly includes Wagner's IRA but arguably not Wagner individually. On the other hand, it is not clear whether Wagner's self-directed IRA can sue and be sued, or has citizenship within the meaning of § 1332.[8] Also, the February 27, 2019 letter and the Wagner affidavit make clear that Wagner himself, not the IRA, has authorization to use the name "Equity Trust Company Custodian FBO Jeffrey Wagner IRA" in acting for the benefit of the IRA.

The parties have not briefed these issues. The court need not resolve them. Assuming that the self-directed IRA can sue and be sued and has citizenship, the IRA would take Wagner's citizenship, so both Wagner and the IRA would be citizens of Illinois.

"While humans and corporations can assert their own citizenship, other entities take the citizenship of their members." *Americold*, 136 S. Ct. at 1014. If the Wagner self-directed IRA is a legal entity distinct from Wagner that can sue or be sued, it is not a corporation; it is an unincorporated entity that takes the citizenship of its members, who would be Wagner (and any other beneficiaries, although no one has suggested that there are any others). *See RTP*, 827 F.3d at 691-92 (members of pension funds that were organized as trusts, and that contracted and litigated in their own names, were the funds' participants and beneficiaries).[9] Thus, the self-directed IRA would take the citizenship of Wagner, which is Illinois.

---

[8] *Cf. La Russo v. St. George's Univ. Sch. of Med.*, 747 F.3d 90, 97 (2d Cir. 2014) ("[D]iversity jurisdiction was not destroyed by the listing of SGU Med., alleged to be a New York resident, as a named defendant. As a non-juridical entity that cannot be sued, its being named as a purported defendant does not destroy diversity jurisdiction."); *FBO David Sweet IRA*, 4 F. Supp. 3d at 1286 n.1 ("An IRA does not file an articles of incorporation but instead serves merely as a vehicle through which individuals, like Sweet, make investments."); *Brady v. Park*, 2019 UT 16, ¶ 114 ("Unlike a trust or a business entity, a self-directed IRA is not a legal entity that is distinct from its owner. Rather, it is more akin to property such as a bank account.") (footnotes omitted; citing cases).
[9] *See also US Fin., Inc. v. Pharos CB Hosp., LLC*, No. 15-cv-50296, 2016 WL 6196038, at *1 n.1 (N.D. Ill. Oct. 24, 2016) ("Recent case law suggests that an IRA's beneficiaries are its members for

Plaintiff argues that "[i]n *Navarro*, the Supreme Court held that trustees can sue in their own names, establishing diversity jurisdiction, and diversity will not be premised on the citizenship of the trust's beneficiaries." (Dkt. 30 at 6.) Plaintiff's argument appears to be that Equity Trust Company is a trustee suing on behalf of the trust's beneficiary. Presumably the argument is that Wagner's self-directed IRA is a trust, Wagner is the beneficiary, and Equity Trust Company as trustee is suing in its own name; therefore, its citizenship controls.

This argument is not persuasive, for two reasons. First, as discussed above, if Equity Trust Company can even be described as "suing" at all, it is suing only nominally. Second, plaintiff's argument depends on the premise that Equity Trust Company is a fiduciary trustee. *See RTP*, 827 F.3d at 691 ("A trust often is a *fiduciary* relation between two people, the trustee and the beneficiary. When the trustee sues (or is sued), the trustee's citizenship matters. And when the beneficiary sues or is sued, or a trust litigates in its own name, again the citizenship of the party controls.") (discussing *Americold* and *Navarro*) (emphasis added). There is no indication that Equity Trust Company is a fiduciary. Every indication from plaintiff's own documents is that Equity Trust Company is a nondiscretionary custodian, not a fiduciary, and that Wagner controls the investments. *See Metz*, 994 F.2d at 398, 402; *Commodity Futures Trading Comm'n v. Heritage Capital Advisory Servs., Ltd.*, 823 F.2d 171, 173 (7th Cir. 1987) ("Only a broker operating a discretionary account—in which the broker determines which investments to make—is viewed as a fiduciary. . . . HCAS operated a nondiscretionary account for Saelens, in which Saelens determined which investments to make.") (citation omitted); *FBO David Sweet IRA*, 4 F. Supp. 3d at 1284–85 (an Equity Trust Company self-directed IRA beneficiary acted as the trustee of the IRA, while Equity Trust Company was a mere holding company; in fact, "[b]ecause [Equity Trust Company] owes no fiduciary duty to Sweet and expressly refuses under the agreement to provide legal services on behalf of the IRA, the only means by which Sweet could redress Defendants' breach of contract was to bring suit himself on behalf of his Self–Directed IRA"); *Deem*, 2016 WL 8230425, at *2 (individual IRA beneficiaries, not custodian, had sole responsibility for decisions; custodian had not been involved in the decision-making process and lacked the factual knowledge that would allow it to bring the action).[10]

---

citizenship purposes."); *Larchmont Holdings, LLC v. N. Shore Holdings, LLC*, No. 16-cv-00575-SLC, 2017 WL 213843, at *4 (W.D. Wis. Jan. 18, 2017) ("As with an LLC, the citizenship of an individual retirement account is determined by the citizenship of its members or owners.").

[10] Although the court need not reach this question, it is also unclear whether the Wagner self-directed IRA is a trust. *See Lewis v. Delaware Charter Guarantee & Tr. Co.*, No. 14-cv-1779 KAM, 2015 WL 1476403, at *11 (E.D.N.Y. Mar. 31, 2015) ("Several federal courts have found that self-directed IRAs do not constitute trusts under state law and, accordingly, IRA trustees do not owe duties of care independent from the duties defined in their trust agreements.").

Ultimately, no matter how this case is viewed, both plaintiff (whether its citizenship is that of Wagner, Wagner's IRA, or Equity Trust Company acting as representative) and defendant (Windwrap) are citizens of Illinois. There is no diversity jurisdiction.

Plaintiff argues that "Equity Trust" is a real party in interest under Fed. R. Civ. P. 17(a)(1)(F). (Dkt. 30 at 5.) Rule 17(a)(1)(F) provides: "An action must be prosecuted in the name of the real party in interest. The following may sue in their own names without joining the person for whose benefit the action is brought: . . . (F) a party with whom or in whose name a contract has been made for another's benefit." Under Rule 17(a), "[t]he 'real party in interest' is the person who possesses the right or interest to be enforced through litigation, and the purpose of this procedural rule is to protect the defendant against a subsequent action by the party actually entitled to recover." *RK Co. v. See*, 622 F.3d 846, 850 (7th Cir. 2010). As *Navarro* explained:

> There is a "rough symmetry" between the "real party in interest" standard of Rule 17(a) and the rule that diversity jurisdiction depends upon the citizenship of real parties to the controversy. But the two rules serve different purposes and need not produce identical outcomes in all cases. . . . In appropriate circumstances, for example, a labor union may file suit in its own name as a real party in interest under Rule 17(a). To establish diversity, however, the union must rely upon the citizenship of each of its members.

446 U.S. at 462 n.9 (citations omitted); *see also Lincoln*, 546 U.S. at 90 (both Rules 17(a) and 19 "address party joinder, not federal-court subject-matter jurisdiction").

The court need not reach the question whether Equity Trust Company is a real party in interest under Rule 17(a)(1)(F).[11] Whether Equity Trust Company's citizenship is determinative for purposes of diversity jurisdiction is a different

---

[11] Although the court need not reach whether Equity Trust Company itself is a real party in interest under Rule 17(a)(1)(F), the court notes some potential issues that would need to be addressed if it were to reach that question. One is whether, in allowing "a party with whom or in whose name a contract has been made for another's benefit" to "sue in [its] own name[] without joining the person for whose benefit the action is brought," Rule 17(a)(1)(F) encompasses a scenario where the party in whose name the contract was made and who is "suing" in its own name appears to be entirely passive and uninvolved, while the "beneficiary" appears to be driving both the contract and the lawsuit using the "contracting" and "suing" party's name. *Cf. Deem*, 2016 WL 8230425, at *1–2 (plaintiffs who sued individually and on behalf of their self-directed IRAs, not IRA custodian, were real parties in interest under Rule 17(a)). A second potential issue is that plaintiff's argument under Rule 17(a)(1)(F) may assume that "Equity Trust Company" was the party in whose name the contract was made, when in fact the loan documents were made in the name of "Equity Trust Company Custodian FBO Jeffrey Wagner IRA." The court, however, declines to reach how Rule 17 might apply here.

matter. The court has already answered that question and concluded that it lacks diversity jurisdiction. Nor need the court reach the question whether Equity Trust Company should be joined under Rule 19.

## IV. Conclusion

For the reasons set forth above, defendant's motion to dismiss [25] is granted. The case is dismissed for lack of subject matter jurisdiction, without prejudice to filing in an appropriate court. Plaintiff's motion to file a sur-reply [33] is granted. Plaintiff's motion for summary judgment [6] is denied as moot.

ENTERED:

Date: March 26, 2020 /s/ Martha M. Pacold